UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HANDICAP DISABLED OF CNY 'No Justice';
WILLIAM SCHISLER, SR.; ANNETTTE DOW,

       Plaintiffs,

      v.                                    6:15-CV-734

MR. MARK DOMENICO, et al.

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Before the Court is Defendants' Motion for Summary Judgement. See dkt. # 89. The parties have briefed the issues and the Court has determined to decide the matter without oral argument.

**I.    Background**

Plaintiffs William and Annette Schisler seek $300,000 from Defendants as compensation for an injury arising out of an alleged violation of the Americans with Disabilities Act ("ADA"), 42 USC § 12132, et seq. See Complaint ("Compl."), dkt. # 1, at ¶ 7. Plaintiff Wiliam Schisler is hearing impaired and "walking disabled." Id. at ¶ 3. To aid his mobility, Schisler uses a cane. Id. Schisler asserts his condition is worsening due to back and leg deterioration, which will require him to use a wheelchair in the future. Id. Plaintiff Annette Schisler suffers from fibromyalgia, migraines, lower back pain, and difficulty in hearing and walking. See Letter from William Schisler ("Schisler Letter"), dkt. # 7, at 1. She wears a hearing aid to enhance her hearing and uses a

cane to assist her movement.  Id. at 1-2.  At the time of the complaint, Plaintiffs and their disabled son William resided at 105 Forth Street in Rome, New York ("105 Fourth Street").  Complt. at ¶1.  William is autistic and has ADHD.  Schisler Letter at 2.  William Schisler states that his wife and "son's disabilities are getting worse and no one cares."  Compl., at ¶3.

The Defendants are City of Rome officials, including:  (1) Mark Domenico, City Director; (2) Greg Shaver, Housing Inspector; and (3) Frank Tallerino, City Engineer.  Id. at ¶¶ 2-3.  Plaintiffs claim that Defendants discriminated against them on account of their disabilities by denying them a permit to construct a driveway on the side of their home at 105 Fourth Street.  Id. at ¶ 5. Plaintiffs allege they were forced form their home in June 2014 and have subsequently received letters telling them that they must cut the grass or "they" will cut it and charge them for the service.  Id.  Plaintiffs allege other instances of harassment as well.  Plaintiffs assert they received letters stating they "had [b]etter cut our grass or they will cut it and charge us for it" and were told that "they want us to shorten our yard on 105 Fourth St and throw away an antique computer which they state is junk."  Compl. at ¶ 5.  Plaintiffs assert they are continually harassed because of their disabilities.  Id.  Defendants should be held accountable, they insist, because the Plaintiffs' home has been destroyed due to their harassment and neglect.  Id.

Defendants have filed a motion for summary judgment and have included the Statement of Material Facts which are not in dispute, as required by Local Rule 7.1(a)(3).  See dkt. # 89-2 ("Defendants' Statement").  Plaintiffs, proceeding *pro se*, have filed a response to that statement.  See Dkt. # 91 (Plaintiffs' Response").

According to those statements, Plaintiffs moved into 105 Fourth Street in 2007. Defendants' Statement at ¶ 1. The parties disagree about the date when Plaintiffs' moved out of that house; Defendants contend that they left in 2013, while the Plaintiffs insist they moved into another property in June, 2014. Id. at ¶ 2, Plaintiffs' Response at ¶ 2. Plaintiffs claim that they moved out temporarily to allow for renovations of the home. Plaintiff's Response at ¶ 2. When they left, Plaintiffs intended to return to the home. Id. at ¶ 3. Both Plaintiffs testified, however, that they cannot now return to the home. Defendants' Statement at ¶ 3. Plaintiffs at some point sought a permit to install a driveway on the Fourth Street property. Id. at ¶ 4. The parties disagree about when that request took place, in 2009 or 2013. Compare Defendants' Statement at ¶ 4 (2009) with Plaintiffs' Statement at ¶ 4 (2013). Plaintiffs do not deny that the City of Rome issued the Schislers a permit to install a driveway. Defendants' Statement at ¶ 18. They complain, however, that others issued such a permit had 75 days to complete the project, while they were permitted only two weeks. Plaintiffs' Statement at ¶ 7.

Plaintiffs no longer own the home at 105 Fourth Street. Defendants' Statement at ¶ 5. Plaintiff Annette Schisler testified that her family moved from Rome to Utica because the house on Fourth Street needed extensive repairs. Id. at ¶ 15. When they returned to the house in Rome in March 2015, the home had been totally destroyed."[1] Id. While they were living in Utica, the mortgage holder, M & T Bank, foreclosed on the home for non-payment. Id. at ¶ 16. Plaintiffs contend that they were unaware of any

---

[1]This destruction apparently came as the result of a burst pipe, which Plaintiffs contend came because the City of Rome Water Department refused to shut off water to the home on Annette Schisler's request, even though her name was on the title as well as William Schisler's name. Plaintiffs' Response at ¶ 16.

3

arrears in payment, and that their lack of knowledge was caused by the conduct of the bank or banks that held the mortgage. Plaintiffs' Response at ¶ 16.

At the close of discovery, Defendants filed the instant motion for summary judgment. Plaintiffs responded, bringing the case to its present posture.

## II.   STANDARD OF REVIEW

Defendants move for summary judgement pursuant to FED. R. Civ. P. 56. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, See Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v.

Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.    DISCUSSION

Plaintiffs assert that City of Rome officials discriminated against them because of their disabilities. This discrimination allegedly occurred when the City of Rome denied Plaintiffs a permit to build a driveway.  They seek relief under the Americans with Disabilities Act ("ADA").  The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A "public entity" means any State or local government.  42 U.S.C. § 12131(1)(A).  "The statute requires that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities."  Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144,153 (2d. Cir. 2013).  Courts in this circuit have concluded that "[z]oning enforcement actions, including the enactment of ordinances, and any administrative processes, hearings, and decisions by zoning boards, can be the subject of an ADA claim.  Innovative Health Sys. v. City of White Plains, 931 F.Supp. 222, 223 (S.D.N.Y. 1996).   Here, Plaintiffs allege that they were denied a permit because of their disabilities.  A party alleging Title II discrimination must prove:

> (1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability.

5

Mary Jo C.. 707 F.3d at 153 (quoting U.S. v. Georgia, 546 U.S. at 153-154).

As explained above, Plaintiffs claim they were denied the service, program or activity concerning a permit to construct a driveway on their property at 105 Fourth Street. Plaintiffs' depositions contradict these claims.

Plaintiff William Schisler's deposition testimony points to two separate complaints about the process of securing this permit, one related to its issuance and one related to the terms of the permit, if it was issued. Schisler testified that he first applied for a permit in 2009. William Schisler Deposition "(Schisler Dep."), dkt. # 89-6, at 16. He related that, after he decided to seek a permit for the driveway, he called "Rome City Hall. They said measure it out, get it measured out, let us know and we will come over and measure with you." Id. at 14. As he was measuring for the driveway, his neighbor, Ronnie Rizzio, came to speak with him. Id. Schisler explained what he was doing, and Rizzio asked Schilser if the City was aware of his project. Id. Told by Plaintiff that the City knew about his plans, Rizzio replied that "there ain't going to be no driveway . . . I will fight you tooth and nail. I will do what it takes, I will make sure you don't get the driveway." Id. City officials came to Plaintiffs' home and told him they had "no problem" with the project. Id. at 16. At the same time, however, these officials saw Rizzio across the street on his porch. Id. at 16-17. They told Rizzio not to "worry, Ronnie, we got it." Id. at 17. When Schisler went to speak with the Mayor, Defendant Fusco, about his application, the Mayor told him he "didn't need a driveway," since he could "pull my vehicles all the way up to [his] back door." Id.

Schisler testified that he waited three years for a ruling on his application for a permit. Id. at 19. In 2012, he alleged, "Rizzio started to use Mayor Fusco's office to

throw" his "weight around." Id.  Schisler further testified that the City and Mayor Fusco ultimately refused to approve his application.  Id. at 20.  He claimed that "former councilman John Sparace, who called me personally, said Mayor Fusco would not authorize any building permit of any kind." Id.  Mayor Fusco never supplied a reason for that refusal, though Plaintiff "knew who was behind it, right across the street, 104 Fourth Street," his neighbor, Rizzio.  Id.  Plaintiff also testified that Fusco was rude to him when he visited his office: "I was [having] problems with my hearing aids, so I took them out.  He put his hands up in my face and told me I didn't need a driveway, I could pull my vehicles all the way up to my back door." Id. at 17.  Plaintiff never got a written document denying him a permit; "[t]hey just said we will give you two weeks" to build the project when "everybody else got seventy-five days." Id. at 21.

Annette Schisler testified that the couple had applied for the permit "to have a driveway put on the side of our house because" William Schisler's "legs were getting bad." Annette Schisler Deposition, dkt. # 89-7 ("A. Schisler Dep."), at 12.  The doctor recommended they do so.  Id.  Her husband spoke with City officials about the work.  Id. at 13-14.  Annette Schisler further testified that the "[n]ext thing I know we received a letter in the mail stating that we would have two weeks to put a driveway in." Id. at 14.  She remembered receiving the letter and testified that it was "at home in a box." Id.  She had not provided the document to the defense.  Id.  Annette Schisler recalled visiting the Mayor to speak about the driveway.  Id. at 15.  The Mayor "put his hands in my husband's face because my husband had his hearing aids off.  My impression was that he was trying to get his attention, but . . . my husband thought he was being rude to him." Id.

The Court reads the Plaintiffs' claim to be that they were denied a permit to construct a driveway because of their disabilities.  In the alternative, they argue that the permit they received treated them differently than others, since they had far less time to complete the project than others who received a similar permit.  Defendants argue that Plaintiffs were provided with a permit, and thus have no claim.  The evidence of record does not contain any such permit, and the evidence recited above does not make clear that Defendants issued the permit, and on what terms.  As explained above, Plaintiffs admit that they received a permit in their Statement of Material Facts.  Their deposition testimony was more equivocal, however; the Court finds the record unclear.  Neither side has presented the Court with conclusive evidence about the existence of the permit, or its terms.  Jurors presented with this question would be required to evaluate the credibility of the parties on this issue, and summary judgment is inappropriate in that respect, as a question of material fact remains.

Summary judgment is appropriate on this claim, however, because Plaintiffs have not pointed to any evidence a reasonable juror could use to find Defendants' conduct in relation to the permit was due to their disabilities, which is the third element of a Title II claim.  See Mary Jo C., 707 F.3d at 153.  Plaintiffs do not point to any statements by any decision-maker that referenced their alleged disabilities.  Instead, William Schisler's testimony indicates that Defendants' decision on the permits came because of their relationship with Schisler's neighbor, Rizzio.  While politicians taking sides in disputes between neighbors may be regrettable, such actions are not evidence that Defendants' made their decision due to Plaintiffs' disabilities.  The only evidence Plaintiffs provide to show that Defendants acknowledged any disability came when

8

Mayor Fusco acted in a manner William Schisler found rude when he had difficulty hearing their conversation. No reasonable juror could find this evidence to conclude that the decision on the permit–whatever it was–was due to Plaintiffs' disabilities. For that reason, the motion for summary judgment will be granted.

Even if Plaintiffs could provide evidence by which a reasonable juror could conclude that Defendants discriminated against them because of their disabilities, Plaintiffs have not pointed to any evidence by which a reasonable juror could conclude they were entitled to damages.

Defendants argue that Plaintiffs cannot maintain a claim for money damages under the ADA. They are correct that under Title III of the ADA, no monetary damages are available. See, e.g., Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004) ("Monetary relief . . . is not available to private individuals under Title III of the ADA . . . A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."). The Defendants' argument is unpersuasive in this respect, however, since the claim is brought pursuant to Title II of the ADA, not Title III. Title II permits money damages, though a particular standard applies. "Claims for compensatory damages under . . . 42 USCS § 12132, require a finding of intentional discrimination, and showing of deliberate indifference may satisfy requisite showing of intentional discrimination." S.H. v. Lower Merion Sch. Dist., 729 F.3d 248 (3d Cir. 2013). "[D]eliberate indifference satisfies the requisite showing of intentional discrimination . . . [C]ourts have generally applied a two part standard for deliberate indifference, requiring both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." Lower

Merion Sch. Dist., 729 F.3d at 262-263. "Deliberate indifference does not require a showing of personal ill will or animosity towards the disabled person. However, deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." Id. "[P]laintiffs seeking compensatory damages must demonstrate a higher showing of intentional discrimination than deliberate indifference, such as discriminatory animus." Id. "In order to obtain money damages as a remedy for [a defendant's] alleged violation of Title II of the ADA, plaintiff would need to show not only that there was a violation, but that such violation was motivated by either discriminatory animus or ill will stemming from the plaintiff's disability." Powell v. Nat'l Bd. Of Med. Exam'rs, 364 F.3d 79,89 (2d Cir, 2004).

Even if evidence existed by which Plaintiffs could recover on their Title II claim, they could not obtain damages under this standard.[2] As explained above, no evidence indicates that–whatever the status of the permit in question–Defendants acted on the basis of Plaintiffs' disabilities. Moreover, no evidence exists that City of Rome officials acted in a manner motivated by discriminatory animus or ill will stemming from Plaintiffs' disability. Therefore, Plaintiffs are not entitled to compensatory damages. The only evidence of animus Plaintiffs provide relates to City official's support of Rizzio in the

---

[2]In any case, the damage for which Plaintiffs would most likely seek recovery–damage to their home after they moved out–would not be available to them if they could prove the elements on an ADA claim. The damage to the home occurred after Rome officials failed to shut off water service when Plaintiff Annette Schisler requested they do so. A pipe burst and caused extensive damage. Plaintiffs have no evidence that anti-disability animus motivated this decision. Plaintiffs lost their home to foreclosure, and do not argue or offer any evidence that they lost their home because of Defendants' anti-disability discrimination. They instead argue that the mortgage-holder committed fraud against them. Thus, they could not prove that the damage they claim was caused by any violation of the ADA.

dispute between neighbors at the foundation of this claim. Such animus, if it existed, was not related to any of Plaintiffs' disabilities, but to the Defendants' relationship with Rizzio. Even if Plaintiffs could introduce evidence that their rights under the ADA had been violated, they could not prove damages, and the Court would therefore grant Defendants' motion on that basis as well.[3]

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** the Defendants' motion for Summary Judgement, dkt. # 89. The facts of record do not demonstrate a genuine issue of material fact exists which would permit a reasonable jury to find in Plaintiffs' favor. The Clerk of Court is directed to CLOSE the case.

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

IT IS SO ORDERED

Dated: June 29, 2018

---

[3] The Court declines to address Defendants' argument that Plaintiffs' claims are moot. The Court has determined that no evidence exists by which a reasonable juror could find for Plaintiffs on their ADA claims. Defendants' mootness argument is predicated on the notion that the case is moot because the offensive conduct could not be remedied. The Plaintiffs have moved from the property in question and will not return. Such argument would be more persuasive if the only remedy available to Plaintiffs were injunctive relief. The Court has explained that damages could be available for the alleged discrimination, and the mootness argument is therefore unavailing.